UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| Charles E. W.[1], | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:20-cv-797 |
| | ) |
| KILOLO KIJAKAZI [2], | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|         Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Charles W., on September 22, 2020.  For the following reasons, the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Charles W., filed applications for Disability Insurance Benefits on October 31, 2016, and Supplemental Security Income on October 30, 2016, alleging a disability onset date of April 24, 2012.  (Tr. 138).  The Disability Determination Bureau denied Charles W.'s applications initially on February 24, 2017, and again upon reconsideration on September 18, 2017.  (Tr. 138).  Charles W. subsequently filed a timely request for a hearing on October 12, 2017.  (Tr. 138).  A hearing was held on July 25, 2019, before Administrative Law Judge (ALJ) Jessica Inouye, and the ALJ issued an unfavorable decision on September 5, 2019.  (Tr. 138-52).  Vocational Expert (VE) Linda M. Gels appeared at the hearing.  (Tr. 138).  The Appeals Council

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.
[2] Andrew M. Saul was the original Defendant in this case.  He was sued in his capacity as a public officer. On July 9, 2021, Kilolo Kijakazi became the acting Commissioner of Social Security. Pursuant to **Federal Rule of Civil Procedure 25(d)**, Kilolo Kijakazi has been automatically substituted as a party.

denied review making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).

First, the ALJ noted that Charles W. met the insured status requirements of the Social Security Act through December 31, 2017. (Tr. 141). At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Charles W. had not engaged in substantial gainful activity since April 24, 2012, the alleged onset date. (Tr. 141).

At step two, the ALJ determined that Charles W. had the following severe impairments: degenerative disc disease of the cervical spine, headaches with possible somatoform disorder, and obesity. (Tr. 144). The ALJ found that the above medically determinable impairments significantly limited Charles W.'s ability to perform basic work activities. (Tr. 141). Charles W. also alleged disability due to asthma, chronic obstructive lung disease, and nystagmus. (Tr. 141). However, the ALJ indicated that those conditions caused no more than minimal limitations on his ability to engage in basic work activities, and therefore they were considered non-severe impairments. (Tr. 141). Charles W. also alleged disability due to post-concussion syndrome, but the ALJ indicated that the record did not reflect a medically determinable impairment of post-concussion syndrome during the applicable period. (Tr. 141).

At step three, the ALJ concluded that Charles W. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 143). The ALJ found that no medical evidence indicated diagnostic findings that satisfied any listed impairment. (Tr. 143).

After consideration of the entire record, the ALJ assessed Charles W.'s residual functional capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can lift, carry, push and pull up to ten pounds occasionally; stand or walk for approximately two hours per eight-

> hour workday and sit for approximately six hours per eight-hour workday, with normal breaks. The claimant can occasionally climb ladders, ropes or scaffolds. He is capable of frequent near acuity. He should avoid concentrated exposure to extreme heat, extreme cold, bright and/or flashing lights, excessive noise, excessive vibration, and hazards such as unprotected heights and dangerous, unguarded machinery. He is unable to engage in complex or detailed tasks, but can perform simple, routine and repetitive tasks consistent with unskilled work and is able to sustain and attend to task throughout the eight-hour workday. He is limited to low stress work defined as having only occasional decision making required and only occasional changes in the work setting.

(Tr. 145). The ALJ explained that in considering Charles W.'s symptoms she followed a two-step process. (Tr. 145). First, she determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Charles W.'s pain or other symptoms. (Tr. 145). Then she evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Charles W.'s functioning. (Tr. 145).

After considering the evidence, the ALJ found that Charles W.'s medically determinable impairments reasonably could have been expected to produce his alleged symptoms. (Tr. 147). However, she found that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 147). The ALJ assigned significant weight to the state agency medical consultants in making her decision. (Tr. 148).

At step four, the ALJ found that Charles W. was unable to perform any past relevant work. (Tr. 150). However, the ALJ then found jobs that existed in significant numbers in the national economy that Charles W. could perform. (Tr. 150). Therefore, the ALJ found that Charles W. had not been under a disability, as defined in the Social Security Act, from April 25,

2012 through the date of her decision. (Tr. 151).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see Bates*, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed

when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520**. The ALJ first considers whether the claimant is presently employed and "doing . . . substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If he is, the claimant is not disabled, and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see **Williams v. Colvin***, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f);** *see **Biestek v. Berryhill**,* 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the private market-survey data underlying her opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

      Charles W. has requested that the court remand this matter for additional proceedings. In

his appeal, Charles W. has argued that the ALJ's RFC was not based upon substantial evidence. Specifically, he alleges that the ALJ failed to properly evaluate the opinions of multiple physicians, that the ALJ erred in analyzing his subjective symptoms, and that the ALJ erred in failing to give more weight to third party testimony.

Charles W. argues that the ALJ failed to consider the opinion of consulting psychologist Dr. Wendell Rohrer. Dr. Rohrer provided an eight-page neuro-rehabilitation report in February 2015, in which he conducted clinical interviews, reviewed medical records, and conducted a variety of neurological tests. (Tr. 728-35). The Commissioner asserts that Charles W.'s arguments ignore information within Dr. Rohrer's opinion, and that therefore the ALJ's finding that his mental impairments did not cause more than a minimal limitation on his ability to perform basic mental work activities was supported by substantial evidence.

An ALJ "may not selectively consider medical reports" and must "consider 'all relevant evidence.'" *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). While an ALJ may adopt medical opinions concerning a claimant's ability to perform work-related activities, the RFC assessment is an issue reserved for the ALJ. **20 C.F.R. §§ 404.1545(e), 416.945(e); SSR 96-5p, 1996 SSR LEXIS 2, \*13, 1996 WL 374183, at \*2 (July 2, 1996)** ("[A] medical source['s] statement must not be equated with the administrative finding known as the RFC assessment"). An ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Rather, "the determination of a claimant's RFC is a matter for the ALJ alone – not a treating or examining doctor – to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing **20 C.F.R. § 404.1520(d)**).

In determining the weight given to a medical source opinion, the ALJ should consider the

length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the opinion's consistency with the record as a whole, the physician's specialties, and any other relevant factors. **20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)**.[3] In doing so, "an ALJ must articulate, at least minimally, his analysis of the evidence so that [the] court can follow his reasoning." *Skarbek v. Barnhart*, 390 F.3d 500, 503, 105 Fed. Appx. 836 (7th Cir. 2004) (citing *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

      Dr. Rohrer opined that Charles W. suffered from depression, which was cause for "considerable concern." (Tr. 729). Dr. Rohrer noted that Charles W. demonstrated "considerable pain behavior with struggles [to] even stand up out of the chair with considerable grimacing and groaning." (Tr. 730). He also noted "significant nystagmus." (Tr. 730). Dr. Rohrer noted a depressed affect, as well as considerable pain behavior throughout the interview and testing process. (Tr. 731). Dr. Rohrer found Charles W. to be "clinically depressed." (Tr. 733). He opined that Charles W.'s depression played "quite [a] significant role in his overall level of functioning and symptom presentation." (Tr. 733). Due to average scores in the neuropsychological testing, Dr. Rohrer opined that Charles W.'s cognitive complaints were "perhaps more so related to depression issues and head pain issues," and he expressed concern that "depression play[ed] a significant aggravating factor in his head pain management." (Tr. 734). Dr. Rohrer further stated that "concern [wa]s raised with regard to problematic psychological insight which may temper his ability to benefit from [psychotherapeutic] intervention." (Tr. 734).

---

[3] C.F.R. §§ 404.1527 and 416.927 apply to claims filed prior to March 27, 2017. For claims filed on or after March 27, 2017, C.F.R. §§ 404.1520c and 416.927c apply instead. Because Charles W. filed his claim on October 30, 2016, and therefore C.F.R. § 404.1527 applies.

The ALJ never mentioned Dr. Rohrer's assessment explicitly, but she did cite to Dr. Rohrer's neurological assessment when she noted that there was no evidence of cognitive impairment. (Tr. 142-44). The ALJ provided no analysis of Dr. Rohrer's assessment, nor did the ALJ discuss Dr. Rohrer' opinion regarding Charles W.'s depression. This is in error.

While ALJs do not need to mention every piece of evidence in the decision, ***Schmidt v. Barnhart***, 395 F.3d 737, 744 (7th Cir. 2005), a medical opinion from an examining consultative psychologist (like Dr. Rohrer) is not just another piece of evidence. ***McKinzey v. Astrue***, 641 F.3d 884, 891 (7th Cir. 2011). The SSA regulations state that ALJs "may not ignore these opinions and must explain the weight given to these opinions in their decisions." **SSR 96-6p,** 1996 SSR LEXIS 3, (July 2, 1996); ***McKinzey***, 641 F.3d at 891; *see also* **20 C.F.R. §§ 404.1527(f); 416.927(f).** "Of course the regulations do not literally say that ALJs must explicitly mention every doctor's name and every detail in their reports. However, when there is reason to believe that an ALJ ignored important evidence – as when an ALJ fails to discuss material, conflicting evidence – error exists." ***Walters v. Astrue***, 444 Fed. Appx 913, 917 (7th Cir. 2011) (citing ***McKinzey***, 641 F.3d at 891; ***Brindisi v. Barnhart***, 315 F.3d 783, 786 (7th Cir. 2003)). Without analysis from the ALJ, the court cannot provide meaningful review of the ALJ's rationale. ***Scott v. Barnhart***, 297 F.3d 589, 596 (7th Cir. 2002).

This is the situation here. Dr. Rohrer provided opinions regarding Charles W.'s mental impairments that contradict the ALJ's findings in the record. The ALJ found that Charles W.'s mental impairments were non-severe, and the ALJ did not mention depression. (Tr. 142). Dr. Rohrer found that Charles W. was "clinically depressed" and opined that Charles W.'s depression played "quite [a] significant role in his overall level of functioning and symptom presentation." (Tr. 733). Dr. Rohrer also opined that Charles W.'s cognitive complaints were

related to his depression, explaining why his cognitive tests were normal. (Tr. 734). This explains the ALJ's findings that Charles W. showed no cognitive impairments on objective testing, yet the ALJ failed to discuss Dr. Rohrer's opinion that his cognitive complaints were related to his depression. (Tr. 143).

The Commissioner asserts that Dr. Rohrer did not provide any specific limitations related to Charles W.'s depression, and therefore the ALJ did not err in failing to consider his opinion. The Commissioner's argument is improper *post hoc* rationalization. The Commissioner may not defend the ALJ's decision using evidence or analysis that the ALJ did not use in the decision. **Parker v. Astrue**, 597 F.3d 920, 922 (7th Cir. 2010) (citing **SEC v. Chenery Corp.**, 318 U.S. 80, 87-88 (1943); **Stewart v. Astrue**, 561 F.3d 679, 684 (7th Cir. 2009) (per curiam); **Mendez v. Barnhart**, 439 F.3d 360, 362 (7th Cir. 2006)). The ALJ did not discuss Dr. Rohrer's opinion at any point in the decision, and therefore the Commissioner cannot argue that the ALJ considered the evidence properly. There is no evidence in the decision that the ALJ considered Dr. Rohrer's opinion outside of his findings of normal cognitive testing, nor is there any argument that the ALJ dismissed Dr. Rohrer's finding of clinical depression based on the lack of functional limitations in the opinion. The Commissioner's argument also fails because Dr. Rohrer's lack of specific functional limitations did not automatically render his opinion useless. Dr. Rohrer concluded that Charles W.'s depression affected both his subjective complaints of pain as well as his cognitive complaints. (Tr. 732-34). While this is not a specific functional limitation, Dr. Rohrer did state that Charles W.'s depression was exacerbating his subjective symptoms complaints. The ALJ failed to consider this opinion, therefore, remand is required.

Charles W. makes other arguments regarding medical opinions, his subjective symptoms, and third-party testimony. However, because the ALJ failed to consider the opinion of Dr. Rohrer,

9

the Court need not address the other arguments at this time.  A full analysis of Dr. Rohrer's opinion may alter the RFC and the subjective symptom determination.  The ALJ will have the opportunity to revisit these other issues on remand.

      Based on the foregoing reasons, the decision of the Commissioner is **REMANDED**.

      ENTERED this 14th day of September, 2021.

                                    /s/ Andrew P. Rodovich  
                                    United States Magistrate Judge